**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| CHERYL BESSER, individually and on behalf of all others similarly situated; | Case No. _____ |
| Plaintiff, | |
| v. | Complaint – Class Action |
| TELCOM CREDIT UNION, | |
| Defendant. | Jury Demanded |

## CLASS ACTION COMPLAINT – JURY DEMANDED

Comes now Cheryl Besser ("Plaintiff Besser"), on behalf of herself and all others similarly situated, and alleges as follows:

## INTRODUCTION

1.      Plaintiff Besser is a legally blind individual.  Her condition was caused by juvenile rheumatoid arthritis and she has been completely blind for the past thirty-two years.

2.      As Plaintiff Besser goes about her daily business, she regularly has occasion to make use of the banking services that are available through Automated Teller Machines ("ATMs"), so long as those ATMs are accessible to the blind. As discussed at length below, federal law includes very specific provisions calculated to guarantee that ATMs are accessible to blind and visually-impaired individuals.[1]

3.      If a given ATM does not include the accessibility features that are mandated by federal law, a blind consumer like Plaintiff Besser cannot use the ATM independently and is thus

---

[1]      Plaintiff invokes the term "accessibility" as a defined term of art.  That is, "accessibility" is specifically defined in the applicable statutes and regulations discussed at length in the text below and Plaintiff is using the term in the context of those definitions, and not in the abstract.

**CLASS ACTION COMPLAINT**                                                              **Page 1**

faced with the prospect of having to share private banking information with other individuals to complete a banking transaction at the ATM.  The mandatory ATM accessibility requirements at issue in this lawsuit are calculated to permit blind and visually impaired individuals to use ATMs independently, without having to divulge private banking information to a third party.

4.     Notwithstanding that federal law mandates very specific ATM accessibility requirements for the blind, a March 7, 2012 Wall Street Journal article noted the widely publicized fact that at least 50% of the nation's ATMs remain inaccessible to blind individuals in violation of these laws.  In that same article, a spokesperson for the National Federation of the Blind ("NFB") was quoted as saying: "It is absolutely unacceptable that at this late date there are hundreds of thousands of ATMs that are still not accessible to blind people."

5.     As is the case nationally, a significant percentage of the ATMs throughout Michigan continue to violate accessibility requirements mandated by federal law.  Many inaccessible ATMs are located within the geographic zone that Plaintiff Besser typically travels as part of her every day and weekly activities.  This shortage of accessible ATMs severely limits the ability of Plaintiff Besser and other blind and visually impaired individuals to benefit from the banking services made available to the American consumer public through ATMs.

6.     The NFB and other blind advocacy groups have been fighting to achieve ATM accessibility since at least as early as 1999, at which time the NFB began to work with the manufacturers of ATMs and the banking industry to encourage the addition of  voice guidance and universal tactile keypads, *inter alia*, to ATM machines.

7.     While some financial institutions have worked pro-actively to achieve compliance with federal ATM accessibility requirements that impact the blind community, the NFB and other blind advocacy organizations have pursued civil litigation against financial institutions

**CLASS ACTION COMPLAINT**                                                                 **Page 2**

which remain in violation of accessibility requirements long after those accessibility requirements were first introduced.[2]

8.      As noted above, to the extent that a given ATM does not comply with the accessibility requirements mandated by federal law, it is nearly impossible for Plaintiff Besser and others similarly situated to independently use that ATM.[3]

9.      After March 15, 2012, Plaintiff Besser visited an ATM owned and operated by Defendant Telcom Credit Union ("Defendant") located at 22245 Haggerty Road, Novi, Michigan 48375 (the "Subject ATM").  The Subject ATM is inaccessible to the blind in violation of applicable law, as is described in detail in the text below.

10.      The Subject ATM is within the geographic zone that Plaintiff Besser typically travels as part of her everyday and weekly activities.   The Subject ATM is located approximately nine (9) miles from Plaintiff Besser's sister's home in Livonia, Michigan.   She visits her sister regularly.  Plaintiff Besser will continue to regularly visit the ATM in the future as part of her effort to locate accessible ATMs that she personally can use within the geographic zone that she typically travels as part of her everyday and weekly activities, and on behalf of the blind community, generally.

---

[2]      The history of the specific accessibility requirements applicable to ATMs is discussed in detail in the text below.

[3]      To understand how difficult it would be for a blind person to use an ATM that does not include the accessibility features at issue in this lawsuit, a sighted individual need only close his or her eyes, approach the ATM and attempt to perform a banking transaction—any transaction. It is impossible to perform the transaction without vision because the input modalities for the transaction rely upon visual cues, which are of course meaningless to somebody who is blind. That is why an ATM is not accessible to a blind individual unless it offers voice guidance and all of the additional accessibility requirements that are mandated by the laws at issue.

**CLASS ACTION COMPLAINT**                                                                **Page 3**

11.     Plaintiff Besser alleges violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and its implementing regulations, and the Michigan Persons with Disabilities Civil Rights Act, MCL §§ 37.1101 *et seq.* ("PDCRA").

12.     On behalf of a class of similarly situated individuals, Plaintiff Besser seeks a declaration that Defendant's ATMs violate federal law as described and an injunction requiring Defendant to update or replace its ATMs so that they are fully accessible to, and independently usable by, blind individuals. Further, as noted below, Plaintiff Besser seeks damages on behalf of herself and others similarly situated as permitted by Michigan law.  Plaintiff Besser also requests that once Defendant is fully in compliance with the requirements of the ADA and the PDCRA, the Court retain jurisdiction for a period of time to be determined to ensure that Defendant has adopted and is following an institutional policy that will, in fact, cause Defendant to remain in compliance with the law.

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction over the ADA claims asserted herein pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

14.     This Court has supplemental jurisdiction over the state laws claims asserted herein pursuant to 28 U.S.C. § 1367(a).

15.     Plaintiffs' claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

16.     Venue in this judicial district is proper under 28 U.S.C. §1391(b)(1) and (2) in that this is the judicial district in which Defendant resides and in which a substantial part of the acts and omissions giving rise to the claims occurred.

**CLASS ACTION COMPLAINT**                                                           **Page 4**

## PARTIES

17.     Plaintiff Cheryl Besser is and, at all times relevant hereto, was a resident of the State of Michigan.  Plaintiff is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2); the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*; and the PDCRA, MCL § 37.1103(d).

18.     Defendant Telcom Credit Union is a credit union organized under the laws of the State of Michigan and is headquartered at 44575 West 12 Mile Road, Novi, Michigan 48377. Defendant is a public accommodation pursuant to 42 U.S.C. § 12181(7)(F) and MCL § 37.1301(a) which offers banking services through its ATMs.

## TITLE III OF THE ADA

19.     On July 26, 1990, President George H.W. Bush signed into law the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.

20.     The ADA broadly protects the rights of individuals with disabilities with respect to employment, access to State and local government services, places of public accommodation, transportation, and other important areas of American life.

21.     Title III of the ADA prohibits discrimination in the activities of places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities.  42 U.S.C. §§ 12181-89.

22.     On July 26, 1991, the Department of Justice ("DOJ") issued rules implementing Title III of the ADA, which are codified at 28 CFR Part 36.[4]

23.     Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 CFR Part 36) contains the ADA Standards for Accessible Design ("1991 Standards"), which were based upon the Americans with Disabilities Act Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date.[5]

24.     In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

25.     In 1999, based largely on the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise its ADA and ABA Accessibility Guidelines.

---

[4]     The DOJ is the administrative agency charged by Congress with implementing the requirements of the ADA.

[5]     The Access Board was established by section 502 of the Rehabilitation Act of 1973.  29 U.S.C. § 792.  The Board consists of 13 public members appointed by the President, the majority of whom must be individuals with disabilities, and the heads of the 12 federal departments and agencies specified by statute, including the heads of the Department of Justice and the Department of Transportation.  Originally, the Access Board was established to develop and maintain accessibility guidelines for facilities designed, constructed, altered, or leased with federal dollars under the Architectural Barriers Act of 1968.  42 U.S.C. §§ 4151 *et seq.* The passage of the ADA expanded the Access Board's responsibilities.

The ADA requires the Access Board to "issue minimum guidelines . . . to ensure that buildings, facilities, rail passenger cars, and vehicles are accessible, in terms of architecture and design, transportation, and communication, to individuals with disabilities."  42 U.S.C. § 12204. The ADA requires the DOJ to issue regulations that include enforceable accessibility standards applicable to facilities subject to Title III that are consistent with the "minimum guidelines" issued by the Access Board, 42 U.S.C. §§ 12134(c), 12186(c), but vests with the Attorney General sole responsibility for the promulgation of those standards that fall within the DOJ's jurisdiction and enforcement of the regulations.

The ADA also requires the DOJ to develop regulations with respect to existing facilities subject to Title III.

**CLASS ACTION COMPLAINT**                                                  **Page 6**

26.    The Access Board issued final publication of revisions to the 1991 ADAAG on July 23, 2004 ("2004 ADAAG").

27.    On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG.

28.    On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

29.    The long-contemplated revisions to the 1991 ADAAG culminated with the DOJ's issuance of The 2010 Standards for Accessible Design ("2010 Standards"). The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards consist of the 2004 ADAAG and the requirements contained in subpart D of 28 CFR Part 36.[6]

### THE ADA HAS LONG REQUIRED THAT FINANCIAL INSTITUTIONS THAT OWN, OPERATE, CONTROL AND/OR LEASE ATMS PROVIDE ATMS THAT ARE FULLY ACCESSIBLE AND INDEPENDENTLY USABLE BY BLIND PEOPLE

30.    Since the enactment of the ADA in 1991, banks and financial institutions which provide banking services through ATMs have been required to ensure that all banking services available at the ATM are fully accessible to, and independently usable by, individuals who are blind. The 1991 DOJ Standards required that "instructions and all information for use shall be made accessible to and independently usable by persons with vision impairments." 28 CFR Part 36, App. A. section 4.34.4.

31.    Initially, the ADA and its implementing regulations did not provide technical details defining the steps required to make an ATM fully accessible to and independently usable by blind individuals.

---

[6]    Though the Effective Date of the 2010 Standards was March 15, 2011, the communication elements of Chapter 7 of the Standards—which frame Plaintiffs' allegations in this case—did not become effective until March 15, 2012, at which time the 2010 Standards became enforceable through civil actions by private plaintiffs.

32.     However, after a lengthy rulemaking process wherein the Access Board entertained extensive input from all stakeholders, the 2004 ADAAGs adopted very specific guidelines calculated to ensure that ATM banking services were, in fact, fully accessible to, and independently usable by, individuals who are blind.

33.     Section 220.1 of the 2004 ADAAGs stated that "where automatic teller machines . . . are provided, at least one of each type provided at each location shall comply with Section 707."

34.     In turn, Section 707 of the 2004 ADAAGs delineated very precise accessibility guidelines for ATMs, including guidelines calculated to ensure that ATMs are fully accessible to, and independently usable by, visually impaired individuals.  These guidelines included, *inter alia*, the following elements:  ATMs shall be speech enabled (*i.e.*, talking ATMs) – Section 707.5; input controls shall be tactilely discernible – Section 707.6; function keys shall have specific tactile symbols – Section 707.6.3.2; Braille instructions shall be provided for initiating the speech mode – Section 707.8; where receipts are provided, speech output devices shall provide audible balance inquiry information – Section 707.5.2; ATMs shall provide the opportunity for the same degree of privacy of input and output available to all individuals (*e.g.*, by providing an option to render the visible screen blank) – Section 707.4.

35.     As noted, the 2010 Standards adopt the 2004 ADAAGs.  The communication elements of the 2010 Standards are set forth at Section 7—including, in relevant part, the elements which are expressly calculated to make ATMs fully accessible to, and independently

**CLASS ACTION COMPLAINT**                                                                 **Page 8**

usable by, visually impaired individuals.  The Section 7 communication elements became fully

effective on March 15, 2012.[7]

36.     Defendant owns, operates, controls and/or leases a place of public

accommodation.

37.     Defendant's ATMs are not fully accessible to, and independently usable by, blind

individuals.  Some of Defendant's ATMs do not have operational headset connectors, provide no

privacy option, utilize incorrect tactile symbols on function keys, do not include Braille

instructions to initiate speech mode, and suffer from myriad additional violations of Section 7 of

the 2010 Standards.

38.     Defendant does not have an institutional policy that is reasonably calculated to

ensure that its ATMs are fully accessible to, and independently usable by, visually impaired

individuals, as those terms are informed by Section 7 of the 2010 Standards.

## VIOLATIONS AT ISSUE

39.     After March 15, 2012, Plaintiff Besser visited Defendant's ATM located at 22245

Haggerty Road, Novi, Michigan 48375.

40.     When Plaintiff Besser visited Defendant's ATM, she had in her possession an

ATM card, and headphones that are compatible with the 2010 Standards, and intended to avail

herself of the banking services offered through Defendant's ATM.

---

[7]     The DOJ has consistently taken the position that the communication-related elements of
ATMs are auxiliary aids and services, rather than structural elements. *See* 28 CFR Part 36, app.
B at 728 (2009).  Thus, the 2010 Standards do not provide a safe-harbor provision for
implementation of these requirements unless compliance would cause an "undue hardship" upon
a public accommodation.

**CLASS ACTION COMPLAINT**                                                      **Page 9**

41.     At the time of this visit, the Subject ATM violated Chapter 7 of the 2010 Standards in that the clear function key did not utilize the proper tactile symbol (Section 707.6.3.2) and there was no audible balance inquiry function (Section 707.5.2).

42.     An investigation performed on behalf of Plaintiff revealed that many of Defendant's ATMs were similarly in violation of Chapter 707 of the 2010 Standards.

43.     Though Defendant has centralized policies regarding the management and operation of its ATMs, Defendant does not have a plan or policy that is reasonably calculated to cause its ATMs to be in timely compliance with Chapter 7 of the 2010 Standards, as is demonstrated by the fact that its network remains out of compliance.

44.     Plaintiff Besser is routinely in the vicinity of the Subject ATM, as she regularly visits her sister's home in Livonia, Michigan.

45.     To date, Plaintiff Besser has not had the practical ability to use the Subject ATM, because it is in violation of the 2010 Standards (and prior to the effective date of the 2010 Standards, the Subject ATM was not otherwise readily accessible to or independently usable by blind individuals).

46.     Plaintiff Besser will continue to attempt to use the Subject ATM because she wants to identify convenient accessible ATM options within the geographic zone that she typically travels as part of her every day and weekly activities, and she wants to increase ATM accessibility for the blind community, generally.  However, so long as the Subject ATM continues to violate Chapter 7 of the 2010 Standards, Plaintiff Besser will be unable to use it independently and will be thereby deterred from visiting it.

47.     Plaintiff Besser uses ATMs that meet the accessibility requirements of the 2010 Standards, but these ATMs are often not conveniently located.

**CLASS ACTION COMPLAINT**                                                          **Page 10**

48.     A significant percentage of the ATMs that are located within the geographic zone that Plaintiff Besser typically travels as part of her every day and weekly activities do not comply with the 2010 Standards and are therefore inaccessible to blind individuals like Plaintiff Besser.

49.     In contrast to an architectural barrier at a public accommodation, wherein a remediation of the barrier to cause compliance with the ADA provides a permanent or long-term solution, the addition of, or repair to, a speech enabling function (and other related accessibility requirements) provided at the ATM of a public accommodation requires periodic monitoring to confirm, not only that the public accommodation is in compliance in the first instance, but also that the public accommodation remains in compliance.

50.     Without injunctive relief, Plaintiff Besser and other legally blind individuals will continue to be unable to independently use Defendant's ATMs in violation of her rights under the ADA.

## CLASS ALLEGATIONS

51.     Plaintiff Besser brings this action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and all legally blind individuals who have attempted to access Defendant's ATMs located in the State of Michigan (the "Rule 23(b)(3) Class").

52.     Plaintiff also brings this action pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of herself and all legally blind individuals who have attempted to access, or will attempt to access, Defendant's ATMs (the "Rule 23(b)(2) Class").

53.     The classes described above are so numerous that joinder of all individual members in one action would be impracticable.  The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court.

**CLASS ACTION COMPLAINT**                                              **Page 11**

54.     Typicality:  Plaintiff's claims are typical of the claims of the members of the classes.  The claims of the Plaintiff and members of the classes are based on the same legal theories and arise from the same unlawful conduct.

55.     Common Questions of Fact and Law:  There is a well-defined community of interest and common questions of fact and law affecting members of the classes in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's facilities and/or services due to Defendant's failure to make its ATMs fully accessible and independently usable as above described.

56.     The questions of fact and law common to the classes include but are not limited to the following:

  a.  Whether Defendant is a "public accommodation" under the ADA;

  b.  Whether Defendant is a "place of public accommodation" under the PDCRA;

  c.  Whether Defendant's conduct in failing to make its ATMs fully accessible and independently usable as above described violated the ADA, 42 U.S.C. § 12101 et seq.;

  d.  Whether Defendant's conduct in failing to make its ATMs fully accessible and independently usable as above described violated the PDCRA, MCL §§ 37.1101 *et seq.*

  e.  Whether Defendant's violations of the ADA constitute per se violations of the PDCRA;

  f.  Whether the PDCRA provides for compensatory and punitive damages and, if so, the proper measure of damages; and,

**CLASS ACTION COMPLAINT**                **Page 12**

      f.      Whether Plaintiff and members of the classes are entitled to damages, costs and/or attorneys' fees for Defendant's acts and conduct.

57.    <u>Adequacy of Representation:</u>  Plaintiff is an adequate representative of the classes because her interests do not conflict with the interests of the members of the classes.  Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the classes and has no interests antagonistic to the members of the classes.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

58.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Rule 23(b)(2) Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Rule 23(b)(2) Class as a whole.

59.    Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3).  Those questions of law or fact (identified above) that are common to the classes predominate over any questions affecting only individual Rule 23(b)(3) Class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

60.    <u>Superiority:</u>  A class action is superior to other available means for the fair and efficient adjudication of the claims of the Rule 23(b)(3) Class.  While the aggregate damages which may be awarded to the members of the Rule 23(b)(3) Class are likely to be substantial, the damages suffered by the individual members of the Rule 23(b)(3) Class are relatively small.  As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Rule 23(b)(3) Class to individually seek redress for the wrongs done to them.  Plaintiff does not know of any other litigation concerning this controversy already commenced by or against any member of the Rule 23(b)(3) Class.  The

**CLASS ACTION COMPLAINT**                                                    **Page 13**

likelihood of the individual members of the class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues.  In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Rule 23(b)(3) Class.  Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

**FIRST CAUSE OF ACTION**
**For Violation Of The ADA, 42 U.S.C. § 12101 *et seq.***
**(On Behalf of Plaintiff and the Members of the Rule 23(b)(2) Class)**

61.     The allegations contained in the previous paragraphs are incorporated by reference.

62.     Defendant has discriminated against Plaintiff and the Rule 23(b)(2) Class in that it has failed to make its ATM banking services fully accessible to, and independently usable by, individuals who are blind in violation of Section 707 of the 2010 Standards, as described above.

63.     Complying with the ADA and Section 707 of the 2010 Standards would neither fundamentally alter the nature of Defendant's banking services nor result in an undue burden to Defendant.

64.     Defendant's conduct is ongoing, and, given that Defendant has not complied with the ADA's requirements that public accommodations make ATM services fully accessible to, and independently usable by, blind individuals—as specifically defined in Section 707 of the 2010 Standards, Plaintiff invokes her statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

**CLASS ACTION COMPLAINT**                                                    **Page 14**

65.     Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully in compliance with the mandatory requirements of the ADA that are discussed above, Defendant's non-compliance with the ADA's requirements that its ATMs be fully accessible to, and independently usable, by blind people is likely to recur.

66.     Plaintiff Besser and other similarly situated persons would like to use Defendant's ATMs.  These individuals are ready, willing, and able to use Defendant's ATMs when the discriminatory policies and barriers are removed or cured.

67.     In addition, the discriminatory policies and barriers at Defendant's ATMs are generally known to Plaintiff Besser and other similarly situated persons.  As such, Plaintiff Besser and other similarly situated persons are discouraged from using Defendant's ATM.

**SECOND CAUSE OF ACTION**
**For Violation Of The PDCRA, MCL §§ 37.1101 *et seq.***
**(On Behalf of Plaintiff and the Members of the Rule 23(b)(2) Class**
**and the Rule 23(b)(3) Class)**

68.     The allegations contained in the previous paragraphs are incorporated by reference.

69.     "'Place of public accommodation' means a business, educational institution, refreshment, entertainment, recreation, health, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public."  MCL § 37.1301(a).

70.     Defendant owns or operates a "place of public accommodation" as that term is defined in § 37.1301(a).

71.     The PDCRA provides that:  "The opportunity to obtain employment, housing, and other real estate and full and equal utilization of public accommodations, public services, and

**CLASS ACTION COMPLAINT**                                              **Page 15**

educational facilities without discrimination because of a disability is guaranteed by this act and is a civil right."  MCL § 37.1102(1).

72.     The PDCRA further provides that:  "A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both."  MCL § 37.1606(1).

73.     Defendant has discriminated against Plaintiff and the Classes in that it has denied individuals who are blind the opportunity to enjoy "full and equal utilization" of its ATM banking services in violation of the PDCRA.

74.     Defendant's violations of the specific requirements of Title III of the ADA described above (specifically including Section 707 of the 2010 Standards) constitute a per se violation of the PDCRA.

75.     Plaintiff Besser and the Rule 23(b)(3) Class have been damaged and will continue to be damaged by this discrimination as more fully set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the members of the classes, prays for:

   a.     A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above (specifically including Section 707 of the 2010 Standards);

   b.     A Declaratory Judgment that at the commencement of this action that Defendant's violations of the specific requirements of Title III of the ADA described above (specifically including Section 707 of the 2010 Standards) constitute a per se violation of the PDCRA;

   c.     A permanent injunction which directs Defendant to take all steps necessary to brings its ATMs into full compliance with the requirements set forth in the ADA, and its implementing regulations, and which further directs that the Court shall retain jurisdiction for a period to be determined after Defendant certifies that all of its ATMs are fully in compliance with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain in compliance with the law;

d.      An Order certifying the classes proposed by Plaintiff, and naming Plaintiff as class representative and appointing her counsel as class counsel;

e.      An award to Plaintiff Besser and each member of the proposed Rule 23(b)(3) Class for damages for Defendant's violation of their civil liberties as provided for under the PDCRA;

f.      Payment of costs of suit;

g.      Payment of reasonable attorneys' fees; and,

h.      The provision of whatever other relief the Court deems just, equitable and appropriate.

### DEMAND FOR TRIAL BY JURY

76.     Plaintiff demands a trial by jury on the issue of liability and damages, with the

Court determining the issue of injunctive relief.

Dated:  August __, 2013                         Respectfully Submitted,

                                                */s/ Daniel O. Myers*
                                                Daniel O. Myers, Esquire (P49250)
                                                The Law Offices of Daniel O. Myers
                                                100 Park Street
                                                Traverse City, Michigan  49684
                                                Phone: 231.929.0500 ext. 122
                                                Fax: 231.929.0504
                                                Email: dmyers@domlawoffice.com
                                                Website: www.domlawoffice.com

                                                Gary F. Lynch, Esquire
                                                Sunshine R. Fellows. Esquire
                                                Carlson Lynch LTD
                                                PNC Park
                                                115 Federal Street, Suite 210
                                                Pittsburgh, Pennsylvania 15212
                                                Email: glynch@carlsonlynch.com
                                                        sfellows@carlsonlynch.com
                                                Phone: 412.322.9243
                                                Fax: 412.231.0246
                                                Website: www.carlsonlynch.com

**CLASS ACTION COMPLAINT**                                          **Page 17**